55 CCPA

### Application of Joseph S. SMATKO.
### Patent Appeal No. 7734.

United States Court of Customs and Patent Appeals.

May 16, 1968.

Lyon & Lyon, Robert M. Taylor, Jr., Los Angeles, Cal. (Homer R. Montague, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.[*]

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals[1] affirming the rejection of claims 1–8 and 10 of appellant's application serial No. 131,857,

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1] Consisting of Asp and Magil, Examiners-in-Chief, and Gaston, Acting Examiner-in-Chief, opinion by Gaston.

filed August 16, 1961, entitled "Hydro-
carbon Fuel Cell." No claim has been
allowed.

The invention is a hydrocarbon fuel cell
of the sort shown in appellant's drawing:

The container 12 is divided into two sec-
tions by diaphragm 16 which is porous,
wet, and electrolytically conductive. The
diaphragm typically is made of asbestos
and contains a dissolved electrolyte, e. g.,
potassium carbonate. Electrodes 14 and
15 are porous and catalytically active.
Electrode 15 may be made of carbon.
Electrode 14, typically porous sintered
nickel activated with platinum black,
contains a radioactive material, e. g.,
cerium [144]. Hydrocarbon fuel, e. g., pro-
pane gas, flows into the chamber on the
left through inlet port 21 and out through
port 22. The oxidizer gas, usually oxy-
gen, flows into the chamber on the right
through port 23 and out through port 24.
The specification points out that hydro-
carbons are relatively unreactive at low
temperatures and that, consequently, ac-
tivating catalysts have been employed in
the electrodes of fuel cells. The use of

such catalysts, however, limits obtainable current density. Appellant's invention, it is alleged, permits activation of the hydrocarbons by the radiation from the electrode, adjacent to which easily consumed "active fragments" of the hydrocarbons are generated.

Claims 1 and 3 are illustrative:

1. A hydrocarbon fuel cell comprising a container separated into first and second compartments by electrode means, said first and second compartments each having inlet and outlet ports for the circulation of a hydrocarbon and an oxidizer, respectively, and said electrode means comprising first and second electrodes associated with said first and second compartments, respectively, said electrodes being separated by an ionic membrane, said first electrode being porous and catalytically active, and containing cerium [144] isotope, said second electrode being porous and catalytically active, and said ionic membrane being porous, wet, and electrolytically conductive.

3. A hydrocarbon fuel cell, comprising a container separated into first and second compartments by electrode means, said first and second compartments each having inlet and outlet ports for the circulation of a hydrocarbon and an oxidizer, respectively, and said electrode means comprising first and second electrodes separated by an ionic membrane, said first electrode being associated with said first compartment and containing a radioactive isotope.

The following references were relied on: [2]

Gunn      2,384,463   Sept. 11, 1945
Foster Wheeler
(British)      801,563   Sept. 17, 1958

*Gunn* describes a fuel cell in which catalytic materials are incorporated into the electrodes so that, at low temperatures, sufficient ionization will take place

at the electrodes to permit oxidation of the fuel. Suitable fuels include hydrogen, methane and propane. Appellant's discussion of *Gunn* in his brief before the board provides a helpful summary of the reference:

> The Gunn patent is used as a basic reference to show as old the concept of a fuel cell employing a hydrocarbon dehydrogenation catalyst in an electrode thereof. Appellant does not contest this showing, * * * nor that it teaches the use of foraminous and sintered electrodes and other now-common features of fuel cells generally.

It is perhaps noteworthy that Gunn's catalysts are not described as dehydrogenative nor is their function limited to the facilitation of dehydrogenation reactions.

*Foster Wheeler* discloses a process for the dehydrogenation of hydrocarbons by subjecting them to nuclear radiation. The specification states:

> When radiation such as alpha, beta, gamma, neutrons and X-rays passes through matter, the heavier particles tend to produce nuclear changes and chemical reactions. It is known that lighter particles and photons such as gamma rays and X-rays produce ionization and activate free radicals when limited to certain energy ranges.

It goes on to say that the heavy particles should therefore be ruled out in order to maximize activation and minimize formation of radioactive product. An example is given in which olefins are manufactured by the disclosed process.

The board felt that these two references made appellant's invention obvious:

> It is established that dehydrogenation of hydrocarbons is a desirable result in the operation of a hydrocarbon fuel cell. Accordingly it would be obvious to one of ordinary skill in this art to include the radioactive material of * * * [Foster Wheeler] shown as

**2.** The examiner also relied on several other references. The board, however, deemed them cumulative and we will not consider them.

dehydrogenating hydrocarbons in the electrode of the hydrocarbon fuel cell of Gunn et al. There is no evidence as to what appellant says is the necessity for the production of hydrocarbon fragments at the electrode or that * * * [Foster Wheeler] differs in this respect.

Appellant argues that the references cited should not have been combined and that, in any event, they do not meet the structural limitations of the claims.

The allegation of impropriety in combining the references, we think, cannot stand in the fact of appellant's statement before the board that "the concept of a fuel cell employing a hydrocarbon dehydrogenation catalyst in an electrode"[3] is an old one. The examiner went no further than the hydrocarbon dehydrogenation art.

Furthermore, we do not think appellant can argue that the fragmentation or ionization effected by his radioactive material is unexpected in view of the similar results effected by the dehydrogenation catalysts used in the fuel cells of the prior art and by the radioactive materials used in other dehydrogenation processes. In Gunn, *dehydrogenation* catalysts are specified for low temperature fuel cells because "catalytic action must take place at the electrode surfaces for promoting gaseous *ionization* thereat."[4] Italics added.) In Foster Wheeler, nuclear radiation is described as productive of nuclear change, chemical reaction, free radical activation and ionization.

We agree with the solicitor that the mere recitation of an element in the claims is not necessarily determinative of its criticality. See In re Eisenhut, 245 F.2d 481, 44 CCPA 974 (1957). Accordingly, we find no merit in appellant's contention that each of the

structural limitations of his claims is critical and must be "met" by the references.

The decision of the board is affirmed.

Affirmed.

---

3. He also stated:
 Classically, the function of the catalysts in such cells has been that of dehydrogenation of the fuel gas, to provide hydrogen atoms for oxidation by the oxidizer, and to accelerate this oxidation.

4. Appellant's brief states:
 * * * neither Gunn et al nor the appellant's structure depend primarily on dehydrogenation but rather on the formation of products that can be electrochemically consumed.